IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

STEVEN KOKOTAYLO,                )
                                 )
            Plaintiff,           )
                                 )
      v.                         ) Civ. Action No. 11-596-GMS
                                 )
CARL DANBERG, et al.,            )
                                 )
            Defendants.          )

## MEMORANDUM

The plaintiff, Steven Kokotaylo ("Kokotaylo"), an inmate at the Howard R. Young

Correctional Institution ("HRYCI"), Wilmington, Delaware, filed this lawsuit pursuant to 42

U.S.C. § 1983.[1] (D.I. 3.) He appears *pro se* and was granted permission to proceed *in forma*

*pauperis* pursuant to 28 U.S.C. § 1915. (D.I. 5.) The court now proceeds to review and screen

the complaint pursuant to 28 U.S.C. § 1915 and § 1915A.

## I. BACKGROUND

Kokotaylo, a sentenced inmate, was housed with an unclassified pre-sentenced detainee

for three months. He was attacked and injured by the detainee on December 6, 2010.[2] Kokotaylo

was forced to lay in dirty, bloody clothes for days while under the direct threat of a mace attack

by correctional officers. As a result of the altercation with the detainee, Kokotaylo required

hospitalization. He alleges that he was denied proper and continuing medical care including

therapy and after care.

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988).

[2] The investigator of the incident believed that the detainee assaulted Kokotaylo, but no criminal charges were brought against the detainee.

Kokotaylo alleges that the defendant Delaware Department of Correction ("DOC") Commissioner Carl Danberg ("Danberg") failed to maintain a safe and proper environment by housing a sentenced inmate with an unsentenced detainee. He further alleges that Danberg allowed prison officials to ignore a known risk of harm and failed to provide him proper medical care. With regard to Warden Phil Morgan ("Morgan"), Kokotaylo alleges that he created a risk of harm by placing him in a prison cell and on a housing unit with an unsentenced detainee, he failed to document the facts of the assault, and there was no follow-up care, pain medication, or physical therapy.

The defendant Correct Care Solutions ("CCS") aggravated Kokotaylo's condition when it refused proper medical care and placed Kokotaylo in a medical holding cell with a disruptive inmate. In addition, Dr. Jones misused antibiotics without consulting a specialist, forced Kokotaylo to walk despite his injuries, failed to change Kokotaylo's blood stained clothing for seven days, and refused to give him pain medication.

Kokotaylo seeks injunctive relief and punitive damages.

## II. STANDARD OF REVIEW

This court must dismiss, at the earliest practicable time, certain *in forma pauperis* and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008);

*Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Kokotaylo proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *see, e.g., Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the court must grant Kokotaylo leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, __U.S.__, 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare

recitals of the elements of a cause of action supported by mere conclusory statements." *Id.* at

1949. When determining whether dismissal is appropriate, the court conducts a two-part

analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and

legal elements of a claim are separated. *Id.* The court must accept all of the complaint's well-

pleaded facts as true, but may disregard any legal conclusions. *Id.* at 210-11. Second, the court

must determine whether the facts alleged in the complaint are sufficient to show that Kokotaylo

has a "plausible claim for relief."[3] *Id.* at 211. In other words, the complaint must do more than

allege Kokotaylo's entitlement to relief; rather it must "show" such an entitlement with its facts.

*Id.* "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility

of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to

relief." *Iqbal*,129 S.Ct. at 1949 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. DISCUSSION

### A. Supervisor Positions

Kokotaylo names Danberg and Morgan as defendants based upon their supervisory

positions. The complaint states that Danberg failed to maintain a "safe and proper environment"

when he placed Kokotaylo on a housing unit with an unsentenced inmate. Similarly, the

complaint alleges that Morgan created a risk of harm by placing plaintiff in a prison cell and on a

housing unit with an unsentenced detainee.

---

[3]A claim is facially plausible when its factual content allows the court to draw a
reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at
1949 (quoting *Twombly*, 550 U.S. at 570). The plausibility standard "asks for more than a sheer
possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are
'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and
plausibility of 'entitlement to relief.'" *Id.*

A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). The Third Circuit has reiterated that a § 1983 claim cannot be premised upon a theory of respondeat superior and, that in order to establish liability for deprivation of a constitutional right, a party must show personal involvement by each defendant. *Brito v. United States Dep't of Justice*, 392 F. App'x 11, 14 (3d Cir. 2010) (not published) (citing *Iqbal*, 129 S.Ct. at 1948-49*); Rode v. Dellarciprete*, 845 F.2d at 1207).

"Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S.Ct. at 1948 (2009). In *Iqbal*, the Supreme Court emphasized that "[i]n a § 1983 suit - here masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal,* 129 S.Ct. at 1949. "Thus, when a plaintiff sues an official under § 1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010), *cert. denied*, __U.S.__, 131 S.Ct. 2150 (2011) (quoting *Iqbal* 129 S.Ct. at 1949). The

factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue. *Id.*

Under pre-*Iqbal* Third Circuit precedent, "[t]here are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)) (second alteration in original)). "Particularly after *Iqbal*, the connection between the supervisor's directions and the constitutional deprivation must be sufficient to demonstrate a plausible nexus or affirmative link between the directions and the specific deprivation of constitutional rights at issue. " *Id.* at 130.

The Third Circuit has recognized the potential effect that *Iqbal* might have in altering the standard for supervisory liability in a § 1983 suit but, to date, has declined to decide whether *Iqbal* requires narrowing of the scope of the test. *Santiago*, 629 F.3d at 130 n.8; *see, e.g., Argueta v. United States Immigration and Customs Enforcement*, 643 F.3d 60, 70 (3d Cir. 2011) ("To date, we have refrained from answering the question of whether *Iqbal* eliminated – or at least narrowed the scope of – supervisory liability because it was ultimately unnecessary to do so in order to dispose of the appeal then before us."); *Bayer v. Monroe County Children and Youth Servs.*, 577 F.3d 186, 190 n.5 (3d Cir. 2009) (In light of *Iqbal*, it is uncertain whether proof of personal knowledge, with nothing more, provides a sufficient basis to impose liability upon a

supervisory official.). Hence, it appears that, under a supervisory theory of liability, and even in light of *Iqbal,* personal involvement by a defendant remains the touchstone for establishing liability for the violation of a plaintiff's constitutional right.[4] *Williams v. Lackawanna County Prison,* 2010 WL 1491132, at *5 (M.D. Pa. 2010).

Facts showing personal involvement of the defendant must be asserted; such assertions may be made through allegations of specific facts showing that a defendant expressly directed the deprivation of a plaintiff's constitutional rights or created such policies where the subordinates had no discretion in applying the policies in a fashion other than the one which actually produced the alleged deprivation; *e.g.,* supervisory liability may attach if the plaintiff asserts facts showing that the supervisor's actions were "the moving force" behind the harm suffered by the plaintiff. *See Sample v. Diecks,* 885 F.2d 1099, 1117-118 (3d Cir. 1989); *see also Iqbal,* 129 S.Ct. at 1949-54; *City of Canton v. Harris,* 489 U.S. 378 (1989); *Heggenmiller v. Edna Mahan Corr. Inst. for Women,* 128 F. App'x 240 (3d Cir. 2005) (not published).

Kokotaylo's constitutional rights were not violated merely because, as a sentenced inmate, he was housed on the same unit as unsentenced detainees. *See e.g. Damiani v. Morgan,* 2011 WL 2847413, at *3  (D. Del. July 14, 2011) (District Courts in the Third Circuit have found that unless the State has an intent to punish, or displays deliberate indifference toward potential harm to an inmate, pre-trial detainees have no liberty interest in being housed separately from

---

[4]"'Supervision' entails, among other things, training, defining expected performance by promulgating rules or otherwise, monitoring adherence to performance standards, and responding to unacceptable performance whether through individualized discipline or further rulemaking." *Sample v. Diecks*, 885 F.2d 1099, 1116 (3d Cir. 1989). "For the purpose of defining the standard for liability of a supervisor under § 1983, the characterization of a particular aspect of supervision is unimportant." *Id.* at 1116-17.

sentenced inmates.).

To the extent Kokotaylo alleges that Danberg and Morgan failed to protect him, the claim fails. To prevail on an Eighth Amendment failure to protect claim, a plaintiff is required to show that (1) he is incarcerated under conditions posing a substantial risk of serious harm (the objective element); and (2) prison officials acted with deliberate indifference, i.e., that prison officials knew of and disregarded an excessive risk to inmate health or safety (the subjective element). *See Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994); *see also Griffin v. DeRosa*, 153 F. App'x. 851 (3d Cir. 2005). Kokotaylo was housed with the detainee for several months prior to their altercation. There are no allegations that Danberg and Morgan knew that the detainee intended to attack Kokotaylo or that they disregarded any potential risk of harm to Kokotaylo.

With regard to Kokotaylo's medical needs claims against Danberg and Morgan, the United States Court of Appeals for the Third Circuit has concluded that prison administrators cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). The Third Circuit clarified that "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (discussing *Durmer*, 991 F.2d at 69). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* at 236. The allegations do not lead to the conclusion that Danberg or Morgan had any reason to believe that plaintiff, who was under medical care, was not

receiving treatment.[1]

Finally, Kokotaylo provides no specific facts how Danberg and Morgan violated his constitutional rights, that they expressly directed the deprivation of his constitutional rights, or that they created policies wherein subordinates had no discretion in applying them in a fashion other than the one which actually produced the alleged deprivation. Nor do his claims of denial of medical care by Danberg and Morgan rise to the level of constitutional violations.

For the above reasons, the court will dismiss as frivolous the claims against Danberg and Morgan pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

## V. CONCLUSION

For the above reasons, the claims against Phelps and Danberg will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). Kokotaylo may proceed with his medical needs claim against Correct Care Solutions.

An appropriate order will be entered.

CHIEF, UNITED STATES DISTRICT JUDGE

Jan 6 , 2012
Wilmington, Delaware

---

[1]Kokotaylo will be allowed to proceed with his medical needs claim against CCS. In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer* 511 U.S. at 837. A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. at 104-05.